R. D. MOSTELLER, CONNELLY WILLIAMS AND WIFE, WILMA WILLIAMS, E. A. WARLICK AND WIFE, LETTIE WARLICK, B. A. BERRY AND WIFE, DONNIE BERRY, AND MRS. KELLY ICARD AND MRS. R. B. MORGAN v. SOUTHERN RAILWAY COMPANY.

(Filed 5 November, 1941.)

**1. Highways § 13—**

Where the State Highway Commission, in the interest of public safety, builds an overpass and relocates a short section of the road in order to cut out dangerous curves and an inadequate underpass, and thereafter tears up the section of old road lying on one side of the underpass, the short section of old road is not a highway abandoned by the State Highway Commission which remains open and in general use by the public within the purview of ch. 302, Public Laws 1933, Michie's Code, 3838 (b), and does not become a neighborhood public road.

**2. Same—**

The statute providing that highways abandoned by the State Highway Commission become neighborhood public roads merely fixes the status of such roads as public roads and does not invest any private easement in owners of property abutting the abandoned road, their right to the continued use of such road being the same as that of the public generally.

3. **Highways § 18—The right of owners of property abutting abandoned road to have road kept open for access to new road is based upon necessity.**

Where a highway has been relocated and a short section of the old road abandoned by the State Highway Commission, the right of the owners of property abutting the abandoned road to continue to use the same is limited to an easement by necessity for the purpose of ingress and egress to the new road, and when only one end of the abandoned road is discontinued and obstructed so that ingress and egress is afforded from the other end, owners of property abutting the old road are not entitled to an easement by necessity and may not restrain the closing of the one end of the old road merely for their convenience as against the right of the owner of the fee in the land to the full enjoyment of his land after the necessity of an easement for a public way no longer exists.

4. **Highways § 1c—**

Where the State Highway Commission, in the interest of public safety, builds an overpass and relocates a highway to cut out dangerous curves and an inadequate underpass, it has the authority to order the underpass closed, if not by authority expressly conferred in ch. 46, sec. 1, Public Laws 1927, then in the exercise of the police power by an appropriate agency of the State.

5. **Railroads § 2—Owners of property abutting abandoned highway held not entitled to restrain railroad from closing abandoned underpass.**

The State Highway Commission, in the interest of public safety, relocated a section of highway to cut out dangerous curves and an inadequate underpass. Plaintiffs, the owners of property abutting the old road, had access to the new road over the section of the old road kept open, but the Highway Commission tore up the section of the old road lying on the other side of the underpass and ordered the railroad company to close the underpass. Plaintiffs instituted this action for a permanent injunction to restrain the railroad company from complying with the order to close the underpass. *Held:* Plaintiffs do not have an easement by necessity and are not entitled to have the underpass kept open merely for their greater convenience in reaching the new road, and there being no contention that the old highway had been in use for sufficient length of time to give them an easement by prescription in its continued use, the temporary restraining order entered in the cause was properly dissolved.

6. **Injunctions § 11—**

In an action for permanent injunction, the temporary restraining order is properly dissolved upon the hearing of the motion to show cause when it is made to appear that plaintiffs are not entitled to the relief sought, but it is error to dismiss the action, and the taxing of costs against plaintiffs at that time is at least premature, since the action can be properly dismissed only at term.

APPEAL by plaintiffs from *Warlick, J.,* at June Term, 1941, of BURKE. Affirmed.

This is an action for a permanent injunction to prevent defendants from closing an underpass and obstructing a road which, as plaintiffs

contend, they have the present right to use.   The facts, as summarized
from the record, appear to be as follows:

About twelve years ago the highway from Connelly Springs to Icard
crossed defendant's railroad at grade a short distance west of the under-
pass which is the subject of the present controversy.   The State Highway
Commission, which succeeded the Burke County highway commissioners
in control of this highway, eliminated the grade crossing by relocating
the highway along the north side of the railway and through the present
underpass to the south side a little west of the post office and school in
that village.   The underpass was made through a fill, the tracks being
supported on a creosoted timber trestle work.   Its upkeep is stated to be
about $225 a year.

While the highway was thus located, the plaintiffs, or some of them,
purchased and built adjacent to the highway, many of them near the
eastern end of this section in the vicinity of the underpass.

Recently the Highway Commission, after surveys and investigation in
which it was ascertained that the underpass was inadequate and that a
section of the highway through it had dangerous curves, decided to
relocate the road, to close the underpass, and to route the highway so as
to cross the railroad on an overhead bridge a short distance from the old
grade crossing, in lieu of the underpass, thus taking out the dangerous
curves in its vicinity, straightening the highway, and eliminating the
expense of upkeep of the underpass.   Accordingly a map was prepared
showing the relocated road in its relation to the existing highway, upon
which map was indicated the closing of the underpass, the building of
the overhead bridge across the tracks, and, in detail, the route of the
proposed relocation.   This map was posted at the courthouse door in
Morganton, as required by statute, and is in the evidence.   No protest
was made to the proposed changes, either by the county commissioners or
any other person, and the Highway Commission proceeded to put into
effect the changes indicated.   The road was relocated, the overhead
bridge constructed, the new highway finished, and the routing completed.
Thereupon the Highway Commission discontinued and tore up that
portion of the highway on the south side leading from the underpass to
the relocated highway, blocking the same and rendering it unavailable
for passage, and removing a bridge across a stream upon the discontinued
portion.   Thereupon the Highway Commission notified the defendant
to close the underpass.   This defendant undertook to do, and while the
work was in progress and partially completed, the plaintiffs brought this
action to permanently enjoin defendant from closing the underpass and
obtained a temporary restraining order.   Upon the hearing of the order

to show cause, the judge dissolved the restraining order, dismissed the action, and taxed plaintiffs with the costs. The plaintiffs appealed, assigning error.

*O. L. Horton and Mull & Patton for plaintiffs, appellants.*
*W. T. Joyner, S. J. Ervin, Sr., Harry L. Riddle, Jr., and Clyde R. Hoey for defendant, appellee.*

SEAWELL, J. The plaintiffs rely on alternative propositions, either of which, they contend, puts the defendant in the wrong: (1) That the relocation of the highway constituted an abandonment by the Highway Commission of the discontinued portion of the old road, which, as they contend, automatically, under C. S., 3838 (b) (Michie's Code, 1939), gave it the status of a neighborhood public road, which defendant had no right to obstruct; (2) that there had been a complete official abandonment or vacation of the road, in which case, as persons who had purchased and built adjacent thereto on the faith of its permanent existence, they had, severally, acquired an easement—not only in the road, but in the underpass as a part of it—with the enjoyment of which defendant cannot lawfully interfere.

1. Chapter 302, Public Laws of 1933, C. S., 3838 (b) (Michie's Code, 1939), as amended, provides that "all those portions of the public road system of the State, which have not been taken over and placed under maintenance, or which have been abandoned by the State Highway Commission, *but which remain open and in general use by the public . . .* are hereby declared to be neighborhood public roads, and they shall be subject to all the provisions of this section with respect to the alteration, extension, or discontinuance thereof," etc. (Italics supplied.) We are of opinion that short sections of roads, discontinued by the Highway Commission in the interest of public safety and closed to travel, are not within the reasonable definition of abandoned highways remaining open and in general use, and are not within the contemplation of the statute.

Of course it was not the purpose of this statute, where it applies, to give any private easement in the further use of an abandoned road, but only to continue the status as a public road. On this phase of the case, none of the plaintiffs could claim a greater right than that which belongs to the general public. If the Highway Commission had the power not only to substitute one section of the road for another but to close the abandoned section, a subject which we discuss more fully below, it is clear that in this respect plaintiffs do not have a justiciable grievance.

2. The case presents no question of easement in the abandoned road by prescription under the common law, because the requisite twenty

years user is lacking. It is at least doubtful whether such an easement could be acquired over defendant's right of way by prescription under any circumstances. C. S., 434; Michie's Code, 1939. But plaintiffs, in this aspect of their argument at least, rest their case upon the theory that there had been a complete official abandonment of the road, leaving to them the right to its continued use as persons who had purchased and built adjacent to it on the faith of its permanent existence, citing amongst other authorities *Davis v. Alexander,* 202 N. C., 130, 162 S. E., 372, and *Long v. Melton,* 218 N. C., 94, 10 S. E. (2d), 699.

In *Davis v. Alexander, supra,* the facts showed continuous use of the road over Alexander's premises for more than fifty years, and the decision might well have turned on the acquisition of a prescriptive right at common law. The case, however, may be considered as supporting the view held by the plaintiff where the factual situation admits of its application. In *Long v. Melton, supra,* the same principle is applied with some variation as to the extent of the persisting right of user in the vacated road.

The reasoning upon which such a right is predicated, the source from which, where recognized, it is said to be derived, leads us to consider the propriety of reasonable limitations upon its exercise. It would be strange if a temporary public servitude, imposed *in invitum,* on the lands of the owner, and terminating before the prescription period had expired, could serve to take from the owner and give to another a private easement in his land which even the sovereign cannot take without compensation. At most, such a right, when recognized, must be in the nature of a continuation, *ex necessitate,* of the original servitude, and must be confined to the exigency of egress and ingress; and since it is in derogation of private right, it must be limited by due consideration for the owner of the soil who was not a party to any commitment made to a purchaser along the highway and did nothing to instigate his faith in its permanence. Those entitled to the continued use of an abandoned or vacated public road on such a principle are obviously not entitled to have the whole road throughout its length left to them in its original unimpaired condition, on the basis of mere convenience in reaching objectives formerly more accessible. *Crowell v. Power Co.,* 200 N. C., 208, 156 S. E., 493. In that case the plaintiff was nonsuited on a similar plea.

Ancient doctrines pertaining to roads of the horse and buggy days, when those roads were for the most part trails through the woods and fields, must be applied to modern conditions with caution and sound discrimination. Once, "ingress and egress" were practically all such a road afforded, and there is logic in the thought that it is all of such a doctrine which should survive. Today roads have been multiplied and

expanded into such luxurious proportions that the expression, "once a road, always a road"—if we attach to it the significance given it by plaintiffs—will give to the abutting owner in a vacated road, if he takes all of it, an easement wholly beyond his necessities and not within the reasonable application of the doctrine.

The trend of judicial decision where this doctrine is recognized is decidedly toward confining such a right to the necessity of egress and ingress. *Blanding v. Las Vegas,* 52 Nev., 52, 280 Pac., 644, 68 A. L. R., 1273; *Kinnear Mfg. Co. v. Beatty,* 65 Oh. St., 264, 62 N. E., 341; *Davis Colliery Co. v. Harding,* 83 W. Va., 609, 98 S. E., 815. Here the entire road leading past plaintiffs' premises has been left in its original condition, connecting with the relocated highway, which reaches the objectives they seek with nothing more than an added inconvenience which we do not think sufficient to constitute or support a cause of action. *Crowell v. Power Co., supra.*

*Ins. Co. v. Carolina Beach,* 216 N. C., 778, 7 S. E. (2d), 13, is not applicable to the facts of this case. There plaintiffs purchased with reference to a map showing streets, and it has long been held that in that event the municipality cannot close such streets to the use of abutting owners. The doctrine, so far as we know, has not been applied to alterations or changes in public roads forming a part of the highway system. *Cameron v. Highway Com.,* 188 N. C., 84, 123 S. E., 465.

3. The action of the Highway Commission in ordering the underpass closed is challenged on the ground that the statute gives no express authority to discontinue an underpass once established. C. S., 3846 (y) (Michie's Code, 1939), confers upon the Highway Commission the power to eliminate grade crossings. Chapter 74, Public Laws of 1929, attempted to give such express power with regard to the elimination of inadequate underpasses and the substitution of other adequate facilities. It attempted to do so, however, by amendment to the 1921 law, which had already been amended by chapter 277, Public Laws of 1925, and it may be said, at least, that the amendment so intended is difficult to allocate. We think, however, that such a power must be implied, if not, indeed, expressly covered, in the language used in chapter 46, Public Laws of 1927, section 1, which authorizes the Highway Commission not only to abandon roads where advisable, but upon relocation, to substitute one section for another. The validity of the authority thus conferred is upheld in *Parker v. Highway Commission,* 195 N. C., 783, 787, 143 S. E., 871, 874. We think also that the power intended to be conveyed in this section may well be supported as an exercise of the police power of the State through an appropriate agency—*R. R. v. Goldsboro,* 155 N. C., 356, 71 S. E., 514—should it become necessary to invoke that doctrine.

Roads are laid out, built, and maintained primarily for the public convenience; but apart from the economies they promote, there is no more imperative consideration in their construction and maintenance than the public safety. From the testimony and inspection of the map which is in evidence, it appears that dangerous curves existed near the underpass which is pronounced "inadequate," and apparently in the approaches thereto. We believe the closing of the underpass under the facts .of this case to be within the general powers committed to the Highway Commission under the cited laws. To state the point concisely, the Highway Commission had the right to speak and the defendant the duty to obey. Conceding that the Highway Commission had the right to substitute another section of road for that leading through and beyond the underpass, that power undoubtedly has been exercised and the elimination of the road renders the underpass useless and unavailable to the plaintiffs, either as members of the general public or as persons claiming an easement therein, however derived. The closing of the underpass under such circumstances is but a resumption on the part of the defendant of the control and use of its own property which invades no right of the plaintiffs.

4. It was proper to dismiss or dissolve the restraining order, but the dismissal of the action upon the hearing of the order to show cause is not approved by decisions relating to the present practice. *Cox v. Kinston,* 217 N. C., 391, 399, 8 S. E. (2d), 252, 258; *Bynum v. Powe,* 97 N. C., 374, 2 S. E., 170. Motions of that kind should be heard at term. Taxing of the plaintiffs with costs was therefore at least premature. In this respect the judgment must be modified. In other respects it is

Affirmed.