NELLO L. TEER COMPANY v. NORTH CAROLINA STATE HIGHWAY
COMMISSION

No. 6910SC17

(Filed 2 April 1969)

**1. Highways § 9— claim against Highway Commission for additional payment — former G.S. 136-29**

In a proceeding before a Board of Review under former G.S. 136-29 for additional payment allegedly due from the State Highway Commission for work on a highway project, recovery, if any, must be within the terms and framework of the contract with the Highway Commission and may not be based on *quantum meruit*.

**2. Highways § 9— appellate review of decision of Board of Review**

The Court of Appeals may review as questions of law whether the facts found by the Board of Review are supported by competent evidence, and whether the facts found support the Board's legal conclusions.

**3. Highway § 9— proceeding against Highway Commission for additional payment — expense of delays**

In this proceeding against the Highway Commission under former G.S. 136-29 for additional payment for highway construction work, the Board of Review could not use as a ground for changing the unit prices bid by the contractor to a force account basis the contractor's extra expense resulting from delays in its construction caused by failure of the prior contractor to perform properly the rough grading, drainage and shoulder work, where no provision in the contract with the Highway Commission permits the contractor to be compensated for delays and the expenses of such delays.

**4. Highways § 9— paving contract — work to correct deficiencies in rough grading — necessity for bids**

Work performed by a paving contractor at the direction of Highway Commission engineers to correct deficiencies in the rough grading, drainage and shoulder work which the prior contractor had failed to perform properly *is held,* to be "Extra Work" or "Unforeseen Work" which could be performed and paid for on a force account basis under the paving contractor's existing contract with the Highway Commission without the necessity of letting a contract for this remedial work to a bidder after advertisement.

**5. Highways § 9— "Extra Work"**

The Highway Commission cannot circumvent the provisions of G.S. 136-28 requiring the letting of bids after advertisement by calling work not specifically covered by the contract "Extra Work;" what is meant by "Extra Work" as used in the Specifications of the Highway Commission must be determined under the facts and circumstances of each particular case.

**6. Highways § 9— "Extra Work"**

"Extra Work" under a contract with the Highway Commission cannot be construed to mean work required to perform the specific items for which unit prices were bid by the contractor.

**7. Highways § 9— findings by Board of Review**

In this proceeding against the Highway Commission under former G.S. 136-29 for additional payment for highway construction work, the evidence is insufficient to support findings of fact made by the Board of Review and adopted by the Superior Court to the effect that the contractor was directed by the Highway Commission to bring the entire project up to Interstate Standards on a force account basis, the contractor being required to perform the work for the unit prices bid in its proposal and according to the proposal, plans and specifications as set out in the contract.

**8. Highways § 9— proceeding against Highway Commission for additional payment — extra work**

In this proceeding against the Highway Commission for additional payment for highway construction work, the Board of Review erred in finding that all work performed by the paving contractor on the highway project was "Extra Work" under the provisions of the contract to be paid for on a force account basis, the contractor being required to perform the specific items of work covered by the contract at the unit prices bid in its proposal, and only extra work not specifically covered in the contract, including that required to correct deficiencies in the rough grading work of the prior contractor, being compensable on a force account basis.

**9. Highways § 9— abandonment of contract — sufficiency of evidence**

Evidence is insufficient to show that Highway Commission engineers directed contractor to abandon highway construction contract and to perform the work on a force account basis, the engineers having no such authority.

**10. Highways § 9— extra work — rates for rental equipment**

In this proceeding against the Highway Commission for additional compensation for highway construction work, the Board of Review erred in using actual equipment costs in determining rental rates for equipment used in performing extra work under highway construction contract instead of using the rate schedule published by the Associated Equipment Distributors as provided for in the contract.

**11. Interest § 1; State § 4— actions against State — interest**

Interest may not be awarded against the State without authorization by statute or contract.

**12. Highways § 9— award against Highway Commission — interest**

In a proceeding against the Highway Commission under former G.S. 136-29 for additional compensation for highway construction work, the

contractor is not entitled to interest on the amount awarded to it by the Board of Review, no statute or provision of the contract with the Highway Commission authorizing the payment of such interest.

**13. Highways § 9— extra work performed by contractor — compensation for all work performed**

The fact that paving contractor was directed by Highway Commission engineers to make extensive corrections of deficiencies in the rough grading, drainage and shoulder work which the prior contractor had not properly performed does not permit the contractor to be compensated on a force account basis for all work performed under its contract with the Highway Commission, the Highway Commission engineers having no authority to change the specific terms of the contract, and the contractor being required to perform the specific items of work covered in the contract at the bid prices in the absence of a supplemental agreement executed by the parties or approval of contract changes by the Director of Highways.

**14. Highways § 9— claim against Highway Commission for additional payment — duty of Board of Review**

In a proceeding against the Highway Commission under former G.S. 136-29 for additional compensation for highway construction work, it is the duty of the Board of Review to interpret the contract with the Highway Commission, but the Board may not by findings of fact rescind or alter the express provisions of the contract.

**15. Highways § 9— proceeding against Highway Commission for additional payment — nonsuit**

In this proceeding against the Highway Commission under former G.S. 136-29 for additional payment for highway construction work, the Superior Court properly denied the motion of the Highway Commission for judgment as of nonsuit.

APPEALS by Nello L. Teer Company and North Carolina State Highway Commission from *Hobgood, J.,* 13 May 1968 Special Non-Jury Civil Session of Superior Court of WAKE County.

This proceeding was initiated on 4 November 1961 by Nello L. Teer Company (Teer) against the State Highway Commission of North Carolina (Commission) under the provisions of G.S. 136-29 as written at that time. Teer seeks to recover sums alleged by it to be due from the Commission for work performed according to the provisions of a contract for the construction of a portion of Interstate Highway #95 under State Highway Project 8.13438, Cumberland County. The claim is based upon a construction contract (hereinafter referred to as Contract) dated 8 July 1958 entered into between Teer and the Commission for Project 8.13438 which provided

for the "Surfacing on Relocation of U.S. 301 From a Point Near Eastover, Northeast of Fayetteville, Northeast to Harnett County Line." Upon denial by the State Highway Engineer of the claim filed, Teer appealed to the full Commission as provided by statute. Thereafter, a Board of Review was constituted pursuant to the provisions of G.S. 136-29 as then written. The Board of Review, after holding hearings, made an award to Teer. Both parties appealed to the Superior Court. From the judgment of the Superior Court, both parties appealed to the Supreme Court. The opinion of the Supreme Court remanding the proceeding for further action not inconsistent therewith was filed 23 July 1965 and is reported in 265 N.C. 1, 143 S.E. 2d 247. After judgment was entered in Superior Court in compliance with the opinion of the Supreme Court, the same Board of Review reconvened on 25 April 1966 and heard additional evidence. Under date of 11 July 1967, the Board of Review again filed its award. One member of the Board of Review dissented from that portion of the award allowing interest and costs to Teer.

The Board made extensive findings of fact and conclusions before making an award to Teer in the following language:

"There is awarded to Nello L. Teer Company from the North Carolina State Highway Commission the sum of Two Hundred Sixty-One Thousand Five Hundred Thirteen Dollars and Sixty-seven Cents ($261,513.67), with interest thereon at six (6) percent per annum from and after November 4, 1961, together with the costs to the Teer Company of these proceedings, except as said costs have otherwise been taxed by the Supreme Court of North Carolina. . . .

It is provided, however, that if the Board had used the Schedule of Equipment Rental Rates of the Associated Equipment Distributors as specified by the Special Provisions to the contract, the Nello L. Teer Company is due a total award on its claim against the North Carolina State Highway Commission in the sum of Four Hundred Thirty-nine Thousand Four Hundred Fifty-seven Dollars and Twenty-six Cents ($439,457.26), with interest thereon at six (6) percent per annum from and after November 4, 1961, together with the costs to the Teer Company of these proceedings except as said costs have otherwise been taxed by the Supreme Court."

From this award, both parties appealed to the Superior Court of Wake County as permitted by statute. The Superior Court entered judgment providing that Teer recover the amount of $261,513.67, together with the costs of the proceeding but without interest. To

the signing and entry of this judgment of the Superior Court, both Teer and the Commission excepted and appealed to the Court of Appeals, assigning error.

*Nye & Mitchell by Charles B. Nye, and Smith, Moore, Smith, Schell & Hunter by Stephen P. Millikin and Larry B. Sitton for Teer.*

*Attorney General Robert Morgan, Deputy Attorney General Harrison Lewis, Assistant Attorney General Henry T. Rosser, and Manning, Fulton & Skinner by Howard E. Manning for the Commission.*

MALLARD, C.J.

Teer on its appeal contends that the Superior Court committed error in failing to allow interest on the amount awarded to it, in ruling that the Board of Review correctly used invoice rental rates for certain equipment, and in failing to adopt the alternate award of the Board of Review based upon the rental rates of the Associated Equipment Distributors.

The Commission on its appeal contends that there are five questions presented, as follows:

1.  Does the principle of *quantum meruit* apply to the State and its agencies?

2.  Is a claim in excess of one thousand dollars arising out of the performance of work not included within the terms of the original contract unrecoverable as repugnant to the terms of G.S. 136-28?

3.  Was the award of the Board of Review made for work not performed under the terms of the contract of 8 July 1958?

4.  Are the findings of fact, conclusions and award of 11 July 1967 by the Board of Review, affirmed by the Superior Court on 27 June 1968, supported by the evidence and exhibits of record?

5.  What sum, if any, is the Nello L. Teer Company entitled to recover of the State Highway Commission as a matter of legal right under the contract of 8 July 1958?

[1]   G.S. 136-29, as it was written before amendments in 1963 and subsequent years, provided the procedure for the settlement of claims against the Commission by a contractor who claimed, upon completion of any contract awarded by the Commission, that he failed to *"receive such settlement as he claims to be entitled to under his contract."* It should be noted that unless the claim arises under

the Contract, the provisions of this statute are not applicable. In the opinion in *Teer Co. v. Highway Commission*, 265 N.C. 1, 143 S.E. 2d 247, the above statute as written prior to 1963 is quoted in full.

We are concerned in this case with what Teer is entitled to recover, if anything, within the terms and framework of the Contract. That this is the basic question involved is settled by the opinion of the Supreme Court in this case, *Teer Co. v. Highway Commission*, *supra*, when it said:

"Under the circumstances, we are of the opinion, and so hold, that Teer, in further hearings before the Board of Review, should be permitted to offer evidence tending to establish the amount, if any, to which it is entitled for work done and materials furnished in categories set forth in its claim of November 4, 1961. Even so, recovery, if any, must be within the terms and framework of the provisions of the contract of July 8, 1958 and not otherwise."

The question is not raised in this case with respect to whether the Contract between the parties was a valid one. It is assumed by all of the parties hereto and found by the Supreme Court that the Contract between the parties of 8 July 1958 for Project 8.13438 was awarded to Teer after compliance with the requirements of the statute, G.S. 136-28, relating to the letting of contracts to bidders after advertisement. We are, therefore, not concerned in this proceeding with the question of whether Teer is entitled to recover on a *quantum meruit* basis. Recovery, if any, must be within the terms and framework of the provisions of the Contract.

[2]    Whether the facts found by the Board of Review are supported by competent evidence, and whether the facts found support the legal conclusion that all work performed by Teer on the project from and after 1 December 1959 was "Extra Work" as defined in the Contract are reviewable by this Court as questions of law. *Teer Co. v. Highway Commission*, *supra*; *Pearson v. Flooring Co.*, 247 N.C. 434, 101 S.E. 2d 301.

There appears to be no dispute between the parties about the fact that as a result of the failure of another contractor to perform properly the rough grading, under the contract for Project 8.13437, the work of Teer under its Contract was interrupted and delayed.

The Board of Review has found, without exception being brought forward by the Commission, that:

"In short, in undertaking to perform its contracts, the Teer

Company was frequently unable to proceed as scheduled on account of the prior contractor's failure to perform properly the rough grading, drainage and shoulder work covered by the prior project (No. 8.13437). The difficulties encountered by the Teer Company included the presence of approximately 168 soft yielding areas of varying size in the subgrade and shoulders due to the presence of stumps, roots, matted vegetation, and other unsuitable material. Before the Teer Company could proceed with the work required under its paving contract, it was necessary to remove such unsuitable material (undercutting) and to replace it with suitable (borrow) material.

The existence of these unanticipated and adverse roadway conditions during the early construction work of the Teer Company interfered with and impaired its work, disrupted its construction schedule, greatly increased its costs, and seriously delayed its paving contract. These adverse conditions were mostly hidden and were and could be discovered only in piecemeal fashion as the Teer Company attempted to carry out its paving work."

[3] ' Teer did not seek to rescind its Contract because of such deficiencies in the rough grading project, resulting in extra expense and delays, but performed the required extra remedial work in addition to that required to perform its Contract. Since we find no provision in the Contract, and none has been called to our attention allowing or permitting Teer to be compensated for the delays and the extra expense caused by such delay, we are of the opinion and so hold that such could not be used in this proceeding by the Board of Review as a ground for changing the unit prices bid by Teer in its proposal to a force account basis.

[4]    The Engineers of the Commission, under the "Extra Work" or "Unforeseen Work" provisions of the Contract, directed Teer to remedy the deficiencies in the rough grading project which included drainage and shoulder work. In section 4.4 of the Specifications the terms "Extra Work" and "Unforeseen Work" are used synonymously. The provisions of the Contract with respect to "Extra Work" are contained in a volume, as amended and supplemented, entitled, "North Carolina State Highway and Public Works Commission, Raleigh, Standard Specifications for Roads and Structures, October 1, 1952" (herein referred to as Specifications). "Extra Work" is defined in these Specifications as "(a)dditional construction items which are not included in the original contract." This language appears to be contradictory in that it appears upon reading it that an

attempt is being made to include something within a contract that is not in fact included therein. However, we interpret this language to mean that extra work is also additional construction items that were not included in the unit prices in the original Contract.

The cost of this extra remedial work exceeded, many times, the sum of $1,000. The question arises as to whether such could be done under the existing Contract or whether G.S. 136-28 required the letting of a contract for this remedial work to a bidder after advertisement. In this connection, in this case of *Teer Co. v. Highway Commission, supra,* the Supreme Court said:

"G.S. 136-28, at all times pertinent to decision herein, contained the following provision: 'All contracts over one thousand dollars that the Commission may let for construction, or any other kinds of work necessary to carry out the provisions of this chapter, shall be let, after public advertising, under rules and regulations to be made and published by the State Highway Commission, to a responsible bidder, the right to reject any and all bids being reserved to the Commission; except that contracts for engineering or other kinds of professional or specialized services may be let after the taking and consideration of bids or proposals from not less than three responsible bidders without public advertisement.' G.S. Vol. 3B, 1958 Replacement. It is noted that G.S. 136-28 was amended in 1963 (S.L. 1963, c. 525) by substituting 'five thousand dollars ($5,000.00)' for 'one thousand dollars.' G.S. Vol. 3B, 1964 Replacement.

By the weight of authority, a statutory requirement for competitive bids constitutes 'a jurisdictional prerequisite to the exercise of the power of a public corporation to enter into a contract.' *Fonder v. City of South Sioux Falls,* 71 N.W. 2d 618, 53 A.L.R. 2d 493 (S.D.), and cases cited.

This statement, supported by cited cases, appears in 135 A.L.R. 1266: 'In general, but subject to certain limitations and exceptions which are considered in subsequent subdivisions of this annotation, statutes requiring the letting of public contracts to the lowest bidder are regarded as rendering invalid and unenforceable subsequent agreements to pay one to whom a public contract has been duly awarded additional compensation for extras or additional labor and materials not included in the original contract, at least where the additional compensation exceeds the amount for which public contracts may be made without competitive bidding.'

'Persons dealing with the public agency are presumed to know

the law with respect to the requirement of competitive bidding and act at their peril.' *Miller v. McKinnon,* 124 P. 2d 34 (Cal.), and cases cited; 49 Am. Jur., States, Territories, and Dependencies § 86; 81 C.J.S., States § 113, pp. 1087-1088. This includes knowledge that the officials and agents of the public agency may not waive the sovereign right of immunity or act in violation of statutory requirements. 19 Am. Jur., Estoppel § 166."

There is no contention nor evidence that there was a letting of a contract after advertisement for the work required to rectify the deficiencies in the work on the rough grading, including drainage system, and shoulders under Project 8.13437. All of the evidence tended to show that this extra remedial work was done by Teer as directed by the Engineer of the Commission and that Teer and the Engineers of the Commission acted upon the assumption that such work could be performed and paid for on a force account basis within the framework of the Contract.

Section 4.4 of the Specifications provides that "(t)he contractor shall perform unforeseen work, for which there is no price included in the contract whenever it is deemed necessary or desirable in order to complete fully the work as contemplated, and such extra work shall be performed in accordance with the specifications and as directed; provided, however, that before any extra work is started a supplemental agreement shall be entered into, *or* a written extra work order issued by the Engineer to do the work." (emphasis added) This section of the Specifications further provides that if the parties cannot agree upon a price for the work that such work will be performed on the force account basis as described in the Specifications. The Specifications also provide that when extra work is done on force account that the contractor shall furnish the Engineer with itemized weekly statements setting forth the cost of all force account work. The Specifications also provide in detail the rule as to compensation with respect to the cost of labor, as well as with respect to bonds, insurance, taxes, materials, equipment, superintendence and other compensation.

Counsel have not cited, and our research has not found, where the Supreme Court of North Carolina has specifically interpreted what the words "Extra Work" mean when used in the Specifications portion of contracts between the Commission and contractors for the construction of highways.

Teer in its brief cites 76 A.L.R. 268 where there is an annotation supported by cited cases to the effect that "(t)he general rule may be deduced from the decisions that where plans or specifications

lead a public contractor reasonably to believe that conditions indicated therein exist, and may be relied upon in making his bid, he will be entitled to compensation for extra work or expense made necessary by conditions being other than as so represented."

Teer also cites many cases relating to the right of a contractor to recover for extra work or expense made necessary by conditions being other than as represented in the Contract. None of the cases cited were brought under a statute like the one under which the parties are proceeding here, although some of them are based on statutes similar to our statutes relating to a referee and some are based on award and arbitration statutes.

In the case of *Equipment Co. v. Hertz Corp. and Contractors, Inc. v. Hertz Corp.*, 256 N.C. 277, 123 S.E. 2d 802, the Supreme Court, speaking of the powers of the Highway Commission, said:

"The Legislature has not set out in detail every incidental power belonging to and which may be exercised by the Commission. As a practical matter the Legislature could not foresee all the problems incidental to the effective carrying out of the duties and responsibilities of the Commission. Of necessity it provided for those matters in general terms. Where a course of action is reasonably necessary for the effective prosecution of the Commission's obligation to supervise the construction, repair and maintenance of public highways, the power to take such action must be implied from the general authority given and the duty imposed. *Mosteller v. R. R.*, 220 N.C. 275, 280, 17 S.E. 2d 133. 'Administrative boards, commissions and officers have no common-law powers. Their powers are limited by the statutes creating them to those conferred expressly or by necessary or fair implication. . . . In determining whether a board or commission has a certain power, the authority given should be liberally construed in the light of the purposes for which it was created and that which is incidentally necessary to a full exposition of the legislative intent should be upheld as being germane to the law. In the construction of a grant of power, it is a general principle of law that where the end is required the appropriate means are given. . . . However, powers should not be extended by implication beyond what may be necessary for their just and reasonable execution.' 42 Am. Jur., Public Administrative Law, s. 26, pp. 316-318."

Applying the foregoing principles of law to the facts in this case, in the light of the circumstances in which the Commission and Teer found themselves after discovering the deficiencies in the rough grad-

ing project, we think that the correction of the deficiencies in the rough grading project were reasonably necessary and highly desirable for the effective prosecution of the construction of Highway Project 8.13438. The work required to remedy the deficiencies found in the rough grading project while the paving or surfacing contractor was carrying out the provisions of the surfacing contract, was unforeseen or extra work. This extra work was permitted under the terms of the Contract when found to be necessary or desirable to complete fully the work as contemplated in the Contract and after a supplemental agreement had been entered into, or a written work order issued by the Engineer of the Commission to do the work. However, after such finding of necessity or desirability, and upon authorization by the Engineer of the Commission, it then became work under the Contract which the contractor was required to perform, even though no supplemental agreement had been entered into.

[4]     We are of the opinion and so hold that upon a proper interpretation of the Contract in the light of the opinion of the Supreme Court in *Teer Co. v. Highway Commission, supra,* and in the light of the circumstances here, the  extra remedial work to repair, construct, and perform properly the rough grading, drainage and shoulder work, that had been improperly and inadequately done by the contractor on Project 8.13437, could properly be performed under the existing Contract on Project 8.13438 and was, under the facts and circumstances of this case, such "Extra Work" or "Unforeseen Work" as referred to and defined in the Contract between the parties hereto on Project 8.13438.

[5]     This holding, however, should not be interpreted to mean that by calling it "Extra Work," the Commission can circumvent the provisions of G.S. 136-28 requiring the letting of bids after advertisement. This cannot be done. What is meant by "Extra Work" as used in the Specifications of the Commission will have to be determined under the facts and circumstances of each particular case. In the case before us and under the circumstances shown, we think that necessity demanded and the Contract permitted that the extra remedial work required to remedy the deficiencies in the rough grading Project 8.13437 be classified as "Extra Work" and performed under the Contract on Project 8.13438.

[6]     "Extra Work," under the Contract, cannot be construed to mean work required to perform the specific items for which unit prices were bid by Teer in its proposal, which are a part of the Contract.

[7]     The Board of Review, in its findings of fact, often refers to

"bringing the project up to Interstate Standards." The Board of Review finds as a fact many times that Teer performed work on a force account basis in "bringing the project up to Interstate Standards," and in so doing committed error. The Contract does not provide for the project to be brought up to "Interstate Standards." There is nothing in the Contract about "Interstate Standards." Some of the letters from the Engineers to Teer mention bringing certain portions of the extra remedial work required to correct the deficiencies in the rough grading project up to "Interstate Standards," but do not say what is meant by "Interstate Standards."

One of these letters, from H. B. Smith, Resident Engineer, to Nello L. Teer, Sr., dated 25 November 1959, (P-112) cites as its subject, "Bringing above Project to Interstate 95 Standard." However, in the letter the writer, after referring to a conference about the project, says:

> "During this conference we discussed the procedure of bringing certain items on the project up to standard for Interstate 95. We examined several of the apparent unsatisfactory conditions and the following was agreed·on, and I was instructed by Mr. John H. Davis to write you *confirming the conference and authorizing the following work.*
>
> All pipe culverts over the entire project are to be uncovered and all pipe lines found unsatisfactory are to be corrected according to State Specifications. All unservicable (sic) pipe shall be replaced with new pipe.
>
> All subgrade not paved is to be thoroughly checked for stumps, root mat, etc. This to be done by scarifying or disking, and any and all unsatisfactory material encountered removed. Certain ramps as directed by me are to be checked for stumps and other objectionable material and same removed and replaced with satisfactory material.
>
> It is understood and agreed you are to *do the above work* under my direction on Force Account in accordance with State Specifications." (emphasis added)

We do not think this letter directed Teer to bring the entire highway project up to "Interstate Standards" on a force account basis; we think it did direct Teer to do the work specified therein on force account in accordance with State Specifications, not "Interstate Standards." In a letter from H. B. Smith, Resident Engineer, to Nello L. Teer, Sr., dated 28 November 1959, (P-113) there were certain changes stated as to the method of payment set out in the

letter of 25 November 1959 (P-112). However, in a letter from H. B. Smith, Resident Engineer, to Nello L. Teer, Sr., dated 1 December 1959, (P-114) it is said, "This is to advise you to disregard my letter dated November 28, 1959. The above mentioned project is to be brought up to Interstate Standards in accordance to my letter dated November 25, 1959." We think that the words "in accordance to my letter of November 25, 1959" limit its application to the performance of and payment for the items set out in such letter.

The Contract requires that the work shall be performed for the unit prices bid by Teer in its proposal *and according to the proposal, plans and specifications,* which are a part of the Contract. "Interstate Standards" no doubt means something to the parties using the term, but there are no requirements or provisions in the Contract requiring that the project be brought up to "Interstate Standards." Teer, when it elected to perform the Contract, was required to perform the work for the unit prices bid by Teer in its proposal *and according to the proposal, plans and specifications* as set out in the Contract. Teer was not required to perform the work according to "Interstate Standards." The Board of Review was therefore in error in making and basing some of its findings of fact on bringing the entire project up to "Interstate Standards" after 30 November 1959.

The Board of Review found as a fact that:

"After numerous discussions, conferences and negotiations between the Teer Company and the Highway Commission, the latter acting within its power under the contract and by various written orders and instructions, culminating on or about December 1, 1959, directed the Teer Company to bring the entire highway project up to Interstate Standards on a force account basis. Thereafter, other orders were issued as the need arose.

The record contains convincing evidence as to these negotiations and orders, as shown by Claimant's Exhibits Nos. P-109, P-110, P-111, P-112, P-113, P-114, P-115, P-122, P-124, P-125, P-127, P-131, and P-132."

[7]   The claimant's exhibits referred to as containing convincing evidence, two of which are hereinabove discussed, do not direct "the Teer Company to bring the entire highway project up to Interstate Standards on a force account basis," and the evidence therefore does not support such finding by the Board of Review. The Superior Court erred in adopting such finding.

[8]   The Board of Review was in error in its findings and inter-

pretation of the Contract, and the Superior Court also committed error, when it found in substance that all work performed by Teer in performing the Contract, including the extra remedial work on and after 1 December 1959, was "Extra Work" under the provisions of the Contract to be paid for on a force account basis. There was evidence tending to show that the Engineers of the Commission did direct Teer to perform on a force account basis the extra remedial work necessary to correct the deficiencies in the rough grading, drainage and shoulder work on Project 8.13437. However, we do not think that this made a new contract out of the Contract on Project 8.13438 requiring or permitting all of the work performed on the surfacing project on and after 1 December 1959 to be compensated for on a force account basis. We are of the opinion and so hold that all of the specific items of work under the terms of the Contract for which unit prices were bid by Teer in its bid proposal, which is a part of the Contract, were to be completed and paid for according to the unit prices bid by Teer in its proposal as set forth in the Contract and that only such extra work as was embraced within the terms of the "Extra Work" provision of the Contract, which included the extra work required to remedy the deficiencies in the rough grading project, was to be paid for on the force account basis as provided in the Contract.

[9]    The Engineers of the Commission did not have the authority to amend the Contract by changing the compensation to be paid for the items in the unit prices bid by Teer in its proposal and substitute in lieu thereof a provision requiring that compensation be made therefor on a force account basis. We are of the opinion that the Engineers of the Commission could not, and that there was not sufficient competent evidence that they did, direct Teer to abandon the Contract.

[10]    Teer contends, among other things, that the Superior Court committed error in holding that the Board of Review had correctly used the invoiced rental rates rather than the rental rates contained in the Special Provisions of the Contract.

The Special Provision of the Contract with respect to rental rates is as follows:

"*Rental Rates for Equipment Used in Performing Extra Work*

The attention of contractors is called to the fact that in the event it is necessary to perform extra work in connection with the construction of this project, the rental rates to be allowed for equipment used in performing such work shall, except as otherwise specified below, be in accordance with the schedule

published by the Associated Equipment Distributors. The cost of fuel, lubricants, and cutting edges shall be added to the above rates.

When extra work is performed with equipment already on the project, the rental rates to be allowed shall be at the hourly rates of 1/160 (20 days @ 8 hours) of the applicable monthly rental rates shown in the above mentioned schedule. The cost of operators, fuel, lubricants and cutting edges shall be added to the above rates."

The Board of Review misinterpreted this Special Provision of the Contract and was in error when it used actual equipment costs as shown on Teer's records in determining rental rates for equipment used *in performing extra work* instead of using the rates set out in the Special Provision of the Contract, and the Superior Court committed error in failing to so find. The Special Provisions of the Contract cannot be ignored. We are of the opinion and so hold that the rental rates set out in the Special Provision of the Contract should be used in determining the compensation, if any, due Teer for the equipment used by it, if any, *in the performance of the "Extra Work."*

[11-12]    Teer's contention that it is entitled to interest on the award and judgment is without merit. Our Supreme Court has held that interest may not be awarded against the State without authorization by statute or contract. We do not think that the Legislature authorized the payment of interest under the provisions of G.S. 136-29. No provisions of the Contract have been called to our attention, and we have found none, authorizing the payment of interest. *Reynolds Co. v. Highway Commission,* 271 N.C. 40, 155 S.E. 2d 473. In addition, it is noted that Teer did not assert a right to interest in its claim of 4 November 1961.

There were three types of work involved here. First, there was work under the provisions of the Contract, the unit prices for which were set out and specified under the specific items of the Contract. Second, there was work under the "Extra Work" provision of the Contract, payment for which was to be on a force account basis as set out in the Specifications. Third, there was extra work of a remedial type to correct the deficiencies in the rough grading, drainage and shoulder work on Project 8.13437, which was also extra work performed under the "Extra Work" provision of the Contract.

[13]    Teer contends that after the deficiencies in the rough grading were found, the Engineers of the Commission, by oral agreement, letters and work order, directed it to bring the entire project up to

"Interstate Standards." Teer contends also that this changed the work to be done to such an extent that on and after 1 December 1959 compensation for all work was to be done on force account basis. No provision of the Contract has been called to our attention, and we have found none, which would permit this to be done by the Engineers of the Commission. On the contrary, the provisions of article one of the Contract read, in part, "The Contractor shall and will provide and furnish all the materials, machinery, implements, appliances and tools, and perform the work and required labor to construct and complete a certain project in Cumberland County, in the State of North Carolina, Surfacing on Relocation of U. S. 301 From a Point Near Eastover, Northeast of Fayetteville, Northeast to Harnett County Line for the unit prices bid by the contractor in his proposal and according to the proposal, plans and specifications prepared by said Commission, which proposal, plans and specifications show the details covering this project and are identified by the Chief Engineer of the Commission, and hereby become a part of this contract." In this Contract Teer is referred to as the "Contractor" and the State Highway Commission of North Carolina is referred to as "Commission." In the Specifications "Engineer" is defined as "(t)he State Highway Engineer, or other Engineer executive of the Commission, acting directly or through his duly authorized representative, such representative acting within the scope of the particular duties assigned to him or of the authority given him."

Other pertinent provisions of the Specifications are:

"4.3 ALTERATION OF PLANS OR OF CHARACTER OF WORK. The Engineer shall have the right to make alterations in plans or character of work as may be considered necessary or desirable during the progress of the work to complete satisfactorily the proposed construction. Such alterations shall not be considered as a waiver of any conditions of the contract nor invalidate any of the provisions thereof.

The right is reserved to increase or decrease any or all of the items in the estimate of approximate quantities as shown in the bid schedule. The length of the project may be increased or decreased by adding or omitting sections or by relocation.

Whenever an increase or decrease in the length of the project exceeds 25 per cent, and whenever any change or combination of changes results in increasing or decreasing the original contract amount as calculated from the bid quantities and contract unit prices by more than 25 per cent, a supplemental agreement ac-

ceptable to both parties to the contract shall be executed in advance of performing the affected work.

Whenever an overrun or underrun of more than 25 per cent of the original bid quantity for one or more major contract items occurs either party to the contract may demand that a supplemental agreement be negotiated with an adjustment of unit price or prices satisfactory to both parties. A major contract item shall be interpreted to be any item, the total cost of which is equal to or greater than 25 per cent of the total contract price, computed on the basis of the proposal quantity and the contract unit price.

Whenever an alteration in character of work involves a substantial change in the nature of the design or in the type of construction which materially increases or decreases the cost of the performance, the work shall be performed in accordance with the specifications and as directed, provided however that before such work is started a supplemental agreement acceptable to both parties to the contract shall be executed.

In all other cases the work involved in any changes shall be performed on the basis of the contract unit price and no supplemental agreement shall be necessary."

These provisions mean, among other things, that the Engineer may make such alterations as may be considered necessary or desirable during the progress of the work to complete satisfactorily the proposed construction, but when such alterations involve such a substantial change in the nature of the work as to materially increase or decrease the cost of the performance, then before such work is started a supplemental agreement acceptable to both parties to the Contract shall be executed. No executed supplemental agreement accepted by or acceptable to both parties has been called to our attention, and we have found none in our search through this voluminous record, transcript and briefs consisting of over 3850 pages with over 950 exhibits, one of the exhibits being a book of Specifications of over 500 pages. In the absence of an executed supplemental agreement, the parties are bound by the terms of the Contract, and recovery, if any, will be controlled by its provisions.

Such changes, as Teer contends occurred, are prohibited by the express terms of the Contract, which on the signature page thereof contains the following: "This contract is valid only when signed by the Director of Highways for the State Highway Commission, and the conditions and provisions herein cannot be changed except over

the signature of the said Director of Highways." Nothing has been
called to our attention, and we have found nothing in this record,
indicating that any changes in this Contract were authorized over
the signature of the Director of the Highways.

In *Teer Co. v. Highway Commission, supra,* it is said that the
Board of Review made no distinction between the work covered
originally by the Contract and the extra remedial work performed
by Teer. The Board of Review committed error, which error was
affirmed by the Superior Court, in finding that all work performed
from and after 1 December 1959 was to be done on a force account
basis. Such a finding is not supported by the evidence, and the Con-
tract does not so provide. The Engineers of the Commission were
without authority to change the specific terms of the Contract.

We are not unmindful of the length of time that this proceeding
has been pending. We know that a termination thereof is desirable.
However, it is observed that this is not an ordinary civil action for
the recovery of an undetermined amount of damages for breach of
contract. Recovery, if any, must be within the terms and framework
of the provisions of the Contract. As Justice Bobbitt said in *Teer
Co. v. Highway Commission, supra,* "(t)he procedure is to resolve
any controversy as to what (additional) amount, if any, the con-
tractor is entitled to recover under its terms." The Board of Review
could not change the provisions of the Contract and neither can this
Court.

[14]    It was the duty of the Board of Review to interpret the Con-
tract, but the Board of Review could not by findings of fact rescind
or alter the express provisions of the Contract.

In 2 Strong, N. C. Index 2d, Contracts, § 12, we find the rule
with respect to the interpretation of contracts stated as follows:

> "When the language is clear and unambiguous the court may
> not, under the guise of construction, ignore or delete any of its
> provisions, nor insert words into it, but must construe the con-
> tract as written, in the light of the undisputed evidence as to the
> custom, usage, and meaning of its terms. It is only in case of
> doubt and uncertainty as to the meaning of the language used
> that judicial construction is necessary, since it is the province
> of the court to construe the agreement and not to make a con-
> tract for the parties."

[15]    We are of the opinion and so hold that the Superior Court
did not commit error in overruling the motion of the Commission
for judgment as of nonsuit. The controversy is one for determina-

tion by the Board of Review upon a correct interpretation of the applicable rules of law. *Teer Co. v. Highway Commission, supra.* However, the Superior Court should have remanded the proceeding to the Board of Review for further consideration in a manner consistent with applicable principles of law and with instructions that it permit the further introduction of evidence, if desired by either or both parties.

The costs of this appeal are taxed as follows: Each party shall pay the entire costs of its briefs, and all of the other costs incident to the appeals shall be taxed one-half against Teer and one-half against the Commission.

For the reasons stated, the judgment of Judge Hobgood is vacated and the cause is remanded to the Superior Court for the entry of a judgment vacating the decision of the Board of Review including all findings and conclusions stated therein, and remanding the proceeding to the Board of Review for further proceedings not inconsistent with the opinion of the Supreme Court in *Teer Co. v. Highway Commission, supra,* and this opinion.

Error and remanded.

BRITT and PARKER, JJ., concur.