MAPCO, INC., Plaintiff v. NORTH CAROLINA DEPARTMENT OF
TRANSPORTATION, Defendant

No. COA05-266

(Filed 17 January 2006)

**Contracts— change—proposal specifications as estimates—no breach of good faith or implied warranty**

A summary judgment for defendant was affirmed in a breach of contract action which arose when defendant reduced the distance a road was to be resurfaced, milled, and repainted under

this contract because of overlap with another contract. This change undermined defendant's reliance on specifications in the bid proposal, particularly the amount of reclaimed asphalt pavement the project would generate, and reduced its profit. However, the contract stated that the amount of milling and resurfacing were subject to change as the project progressed, and contract provisions concerning changes were not applicable. Claims of breach of good faith and breach of defendant's implied warranty that plans and specifications were accurate were not argued or supported in the brief, or were without merit.

Appeal by plaintiff from an order entered 19 November 2004 by Judge John R. Jolly, Jr. in Wake County Superior Court. Heard in the Court of Appeals 20 October 2005.

*Bugg & Wolf, P.A., by John E. Bugg and William J. Wolf, for plaintiff-appellant.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Fred Lamar and Assistant Attorney General Steven Armstrong for defendant-appellee.*

ELMORE, Judge.

This case arises from the North Carolina Department of Transportation's (DOT) decision to reduce the amount of necessary construction under a contract it had with MAPCO, Inc. (MAPCO). On 1 December 2000 the DOT awarded a construction contract to MAPCO for the milling, resurfacing, and placement of markings on two sections of Highway 421 in Guilford County. The project was centered in Division 7 of the DOT and under that division's authority. At a pre-construction meeting between the parties, MAPCO was informed that the DOT was going to reduce the scope of the contract due to the fact that a small portion of MAPCO's project was going to overlap with one of the DOT's larger projects—a project managed at the state level. In order to prevent the overlap, MAPCO's 11.45 mile project was reduced by 6,900 linear feet, or 1.3 miles. MAPCO, however, had placed its bid according to the specifications in the bid proposal, in particular relying on the amount of reclaimed asphalt pavement (RAP) the project was going to generate. Because of the cost savings the proposed RAP would generate on the project and profit made through the sale of the excess, MAPCO lowered its bid or otherwise credited the DOT. The DOT's alterations in the project

were such that MAPCO would now not realize the gain it bargained for from the $2,956,775.73 contract.

MAPCO pursued its administrative and statutory remedies against the DOT without relief. Thereafter it filed suit against the DOT on 22 May 2003 alleging breach of contract. MAPCO claimed, in part, that:

> 14. At the time the project was bid, Mapco relied to its detriment on the detailed plans and specifications for the work. Further, at the time the Department awarded the project to Mapco, the Department was fully aware that a portion of work was going to be deleted from the project but did not inform Mapco of this until after Mapco had allowed the Department more than $100,000.00 credit for the material to be recycled from the milling work as part of its bid for the work. Mapco's bid ultimately became part of the contract between Mapco and the Department.
>
> . . .
>
> 17. The Department breached its obligations to Mapco by failing to adjust the contract amount to return the value of the credit Mapco allowed the Department in its bid for the value of the milling materials.

The DOT denied MAPCO's allegations and also filed for summary judgment. MAPCO, agreeing that there was no genuine issue of material fact, also filed for summary judgment. The trial court ordered summary judgment in favor of the DOT. MAPCO appeals.

Our review of an order for summary judgment is well understood, *see Lee v. R. & K. Marine, Inc.*, 165 N.C. App. 525, 526-27, 598 S.E.2d 683, 684 (2004), and while both parties agree there is no genuine issue of material fact, each contends they were entitled to summary judgment as a matter of law. Even while viewing the facts in the light most favorable to MAPCO, however, we agree with the trial court that the DOT was entitled to summary judgment in its favor.

Included in the contract between the parties is the 1995 edition of the North Carolina Standard Specifications for Roads and Structures (SSRS). Application of these specifications along with other provisions within the parties' contract determine who shall recover. *See Teer Comp. v. Highway Commission*, 265 N.C. 1, 13, 143 S.E.2d 247, 256 (1965).

It is noted that the statutory procedure is available when the contractor has completed his contract with the Highway Commission and fails to receive 'such settlement as he claims to be entitled to *under his contract.*' . . . The procedure is to resolve any controversy as to what (additional) amount, if any, the contractor is entitled to recover under its terms.

*Id.* (emphasis in original); *see also Thompson-Arthur Paving Co. v. N.C. Dept. of Transportation,* 97 N.C. App. 92, 94, 387 S.E.2d 72, 73 (1990) (statutory recovery is limited to terms of contract and this is the exclusive remedy); *Teer Co. v. Highway Comm.,* 4 N.C. App. 126, 142, 166 S.E.2d 705, 716 (1969) ("In the absence of an executed supplemental agreement, the parties are bound by the terms of the Contract, and recovery, if any will be controlled by its provisions."). Further, "[w]here the provisions of a contract are plainly set out, the court is not free to disregard them and a party may not contend for a different interpretation on the ground that it does not truly express the intent of the parties." *Dixon, Odom & Co. v. Sledge,* 59 N.C. App. 280, 284, 296 S.E.2d 512, 514-15 (1982); *Teer,* 4 N.C. App. at 143, 166 S.E.2d at 716 (quoting 2 Strong's North Carolina Index 2d, *Contracts* § 12).

The parties' contract states that the amount of milling and resurfacing are subject to change as the project progresses; in other words, the figures provided by the DOT and used by MAPCO in bidding on the project are estimates only.

The quantities shown in the itemized proposal for the project are considered to be approximate only and are given as the basis for comparison of bids. The Department of Transportation may increase or decrease the quantity of any item or portion of the work as may be deemed necessary or expedient.

An increase or decrease in the quantity of any item will not be regarded as sufficient ground for an increase or decrease in the unit prices, nor in the time allowed for the completion of the work, except as provided for the contract.

Despite this language, MAPCO contends that several of the contract's provisions allow it to recover the lost offset against the DOT.

First, MAPCO argues that the exclusion of 6,900 linear feet from the project was an elimination of a contract line item. Section 104-6 of the SSRS states the DOT "may eliminate any item from the contract, and such action will in no way invalidate the contract."

However, if the contractor has incurred expenses related to the eliminated item, the contractor is entitled to a reimbursement of costs. But this provision is not applicable to the parties' dispute here. The DOT did not eliminate any contract line item; rather, the DOT reduced the quantity of several line items of work by shortening the distance of the overall project. For instance, the DOT did not eliminate MAPCO's need to place a yellow line marking on the highway, a line item in the contract; it did, however, reduce the length that marking would need to be.

Second, MAPCO contends the DOT altered the tolerance (depth) of the milling, and under section 612-4 of the SSRS it is entitled to additional money. Section 612-4, entitled "Tolerance," addresses the depth a contractor shall mill the existing pavement before resurfacing it.

> Removal of the existing pavement shall be to the depth required by the plans or project special provisions. The Engineer may vary the depth of milling by not more than one inch. In the event the directed depth of milling per cut is altered by the Engineer more than one inch, either the Department of the Contractor may request an adjustment in unit price under the provisions of Article 104-3.

MAPCO contends that since the depth of milling in the section removed from the contract was altered from three inches to zero, it is entitled to the offset. We cannot agree with the applicability of this provision either. The plain language of the section applies to alterations or variations in the *depth* of milling pavement lengths that exist under the contract, not in offering an offset when the contractor's *distance* of pavement to mill is reduced by direction of the DOT. In fact, according to the record, the tolerance of the milling in the contract did not vary, instead 36,800 square yards of three inch deep milling was removed from the contract, along with every other aspect of work to be done to those 36,800 yards.

Third, MAPCO contends the DOT altered the construction plans and materially changed the character and cost of the work it was supposed to perform. Section 104-3 of the SSRS addresses these concerns. This section generally states that if the DOT alters the contract plans it shall not constitute a breach and the contractor agrees to perform the work as altered for the original bid price. But there is a notable conditional exception to this agreement: if the altered plans or details 1) materially change the character of the work and 2) ma-

terially change the cost of performing the work, then an adjustment in price is warranted. "An adjustment in the affected contract unit or lump sum prices due to alterations in the plans or details of construction that materially change the character of the work and the cost of performing the work will be made by the Engineer only as provided in this article." According to this provision, absent a *material* change in character and cost, there is no agreement to adjust the price.

MAPCO would have this Court ostensibly ignore the word "material," and instead read the contract to authorize an adjustment in price any time there is an alteration in the plans. Yet to do so would reverse the clear intent of this extensive provision and place it in conflict with others throughout the contract. *See Reaves v. Hayes*, 174 N.C. App. 341, 345, 620 S.E.2d 726, 729 (2005) (contract terms are to be harmoniously construed and each word given effect) (quoting *Gaston County Dyeing Machine Co. v. Northfield Ins. Co.*, 351 N.C. 293, 299-300, 524 S.E.2d 558, 563 (2000)). Most importantly, MAPCO does not argue that the deletion of 6,900 linear feet from the contract increased its cost or materially changed the character of the work it performed. Rather, MAPCO contends that "[s]ince [its] bid price included a credit for the value of the RAP that [it] was to receive under the express terms and conditions of the parties Contract, the Department owed [it] the value of those materials when the Department changed its plans and took back much of the RAP [it] had been promised."

But as stated earlier, the quantities in the contract were estimates, and presumptively, if there was 1) a material change in the plans or details, or 2) if a major contract item's quantity is altered greater than fifteen percent, the SSRS, and thus the parties' contract, allows for flexible adjustments. Outside these provisions, there is nothing in this contract or the record before us that protects MAPCO's interest in the amount of RAP it would be able to take away from the project had the estimates been actually realized. Indeed, section 612-1 of the SSRS states: "milled material shall become the property of the Contractor." But there is nothing to suggest, as the DOT points out, that this provision entitles MAPCO to anything other than the material actually milled.

Fourth, MAPCO argues that when the DOT reduced the necessary distance of the resurfacing project it breached the implied duty of good faith. MAPCO acknowledges that the bid proposal contains estimated quantities, but suggests that "absent an error by the

Department in calculating the 'estimated quantities,' it is virtually impossible to have any significant variations in those quantities on a resurfacing project without an alteration to the plans." MAPCO goes on to claim that the Department did just that, alter the plans. However, alteration of construction plans is a conceivable event and one that was specifically dealt with throughout the contract. Although perhaps hinting that the DOT acted in bad faith by allowing the estimates to be included in the proposal while knowing them to be false, this claim is not supported or argued in the brief.

Last, MAPCO argues that the DOT breached its implied warranty as to the accuracy of the plans and specifications for the project. We find this argument lacks sufficient merit. Thus, having resolved that the trial court did not err in finding summary judgment in favor of the DOT, we affirm its order.

Affirmed.

Judges McCULLOUGH and LEVINSON concur.