IN THE MATTER OF ROBERT FRANCIS FORD

No. 8010SC1040

(Filed 16 June 1981)

1. **Administrative Law § 8— appeal from ruling of state agency—record on appeal**

   In petitioner's action to have the Teachers' and State Employees' Retirement System of N. C. to waive the deadline clause found in G.S. 135-4(m) and allow him to purchase credit subsequent to 30 June 1979 for his withdrawn account and out-of-state service at a price which was effective until 30 June 1979, there was no merit to petitioner's contention that the record before the superior court should have contained a narration or summary of his oral presentation before the Board of Trustees of the Retirement System, since petitioner's arguments before the Board did not constitute evidence but were more closely analogous to arguments made by a party or his counsel at trial, and therefore could not properly be included in the record before the superior court.

2. **Retirement Systems § 3— reinstatement of withdrawn account—no extension of deadline**

   There was no merit to petitioner's contention that the Board of Trustees of the Teachers' and State Employees' Retirement System of N. C. was wrong in its conclusion that the Retirement System did not have discretionary power to extend or waive statutory deadlines for the reinstatement of a withdrawn account or for purchase of out-of-state service, since a waiver by the Board of Trustees would not be a rule or regulation to prevent injustice and inequality across the board, but simply a waiver in a specific instance, and such action would not be permitted by G.S. 135-6(f).

APPEAL by petitioner from LEE, Judge. Judgment entered 26 September 1980 in Superior Court, WAKE County. Heard in the Court of Appeals 29 April 1981.

The facts in this case are undisputed. Petitioner was employed by the Hendersonville Water Commission and became a member of the North Carolina Local Governmental Employees' Retirement System. He remained a member for 7.42 years — until he resigned his position at the end of 1953. On 23 February 1954, petitioner withdrew his accumulated contribution from the Retirement System, thereby closing his account. Petitioner was employed by the Greenville County Schools in South Carolina from January 1959 through June 1965. Subsequently, he began working for the Henderson County Board of Education and became a member of the Teachers' and State Employees' Retirement System of North Carolina [hereinafter Retirement System] on 1 September 1966. Petitioner is still employed with the Board of Education and has had no break in service.

In 1976, petitioner wrote the office of the Retirement System, making inquiry as to the possibility of purchasing retirement credit for his state service in South Carolina as well as restoring his withdrawn account in the North Carolina Local Governmental Employees' Retirement System. The Retirement System's office responded on 20 May 1976. The office informed petitioner he could restore his withdrawn account by making a lump sum payment of $2,916.58, but that the payment would have to be made by 1 December in order to avoid the accrual of additional interest. The office responded additionally by sending petitioner the forms necessary to verify his South Carolina service. The forms were completed and returned to the Retirement System office in June.

In late June, petitioner was informed by the Retirement System that with his present state service (ten years), he was eligible to purchase five years of *out-of-state* service by making a lump sum payment of $3,599.75 before 1 December 1976. *See* G.S. 135-4(k). Both the June letter and the letter of 20 May admonished petitioner that the lump sum payment had to be made in any event within three years after he became eligible to make the payment. *See* G.S. 135-4(m).

Petitioner did not make the lump sum payment in 1976. On 28 August 1978, he again wrote the Retirement System office requesting updated figures on the cost of restoring his *withdrawn account* and purchasing his *out-of-state service*. The office

responded in September, notifying petitioner that the cost of restoring his withdrawn account had risen to $3,517.87. The office further responded that the deadline to purchase the past service would be 30 June 1979. Upon his request on 2 June 1979, the Retirement System sent a copy of the September 1978 letter to petitioner. Nothing else was heard from petitioner until Tuesday, 3 July 1979.

In a letter dated 3 July petitioner informed the Retirement System that he had called their office on the previous day and had been informed that the period during which he could purchase the service in question had been extended by law and that an actuary would have to recalculate the cost. The undisputed facts show that petitioner did not rely on the system's representation in failing to make the payment by the deadline. On 11 October 1979, a benefits counselor from the Retirement System wrote petitioner to inform him that the cost of restoring his withdrawal account would now be $12,703.12. The cost of purchasing six years of out-of-state service would be $10,281.42. If both periods of service were purchased, the cost would be $28,207.20. (The amount is higher than the sum of the costs quoted because of the change in the actuarial value as a result of petitioner's being able to retire at an earlier date if *both* periods were purchased.)

On 14 February 1980, petitioner requested a Declaratory Ruling from the director of the Retirement and Health Benefits Division of the State Treasurer's office. Petitioner asked that the Retirement System waive the deadline clause found in G.S. 135-4(m) and allow him to purchase credit for his withdrawn account and out-of-state service at the price which was effective until 30 June 1979. The director found that G.S. 135-4(m) makes no provision for a waiver of the deadline and denied petitioner's request.

The director's decision was upheld by the Chairman of the Board of Trustees of the Retirement System. Petitioner appealed to the superior court. From a judgment affirming the decision of the chairman, petitioner appeals to this Court.

*Attorney General Edmisten, by Assistant Attorney General Norma S. Harrell, for the State.*

*Frank B. Jackson for petitioner appellant.*

HILL, Judge.

[1] Petitioner argues in his first assignment of error that the superior court erred by overruling his objection to the respondent-State's proposed record on appeal before that court. Petitioner contends the record should have contained a narration or summary of his oral presentation before the Board of Trustees of the Retirement System. We disagree.

The procedures in this case are governed by the Administrative Procedure Act, Chapter 150A of the General Statutes. Petitioner requested the first analysis of his situation by asking that the director of the Retirement and Health Benefits Division give him a declaratory ruling. G.S. 150A-17 provides that:

On request of a person aggrieved, an agency shall issue a declaratory ruling as to the validity of a rule or as to the applicability *to a given state of facts* of a statute administered by the agency or of a rule or order of the agency, . . .. (Emphasis added.)

G.S. 150A-17 clearly does not contemplate an evidentiary proceeding. If evidence were required to establish the facts, then the proper procedure would have been to hold a contested case hearing. *See* G.S. 150A-2(2) and Article 3 of Chapter 150A.

Petitioner, pursuant to section .0303 of the North Carolina Administrative Code, appealed the declaratory ruling to the Board of Trustees of the Retirement System. No evidence was presented at this stage. The Board based its decision affirming the declaratory ruling upon petitioner's oral presentation, the declaratory ruling itself, and the relevant statutory provisions. So, by the very nature of the administrative procedure followed by petitioner, his arguments before the Board could not properly be included in the record before the superior court. Petitioner's statements did not constitute evidence. Instead, petitioner's oral presentation is more closely analogous to arguments made by a party or his counsel at trial. Petitioner's first assignment of error is without merit and overruled.

[2] In his second assignment of error, petitioner argues that the superior court erred in affirming the decision of the Board of Trustees of the Retirement System. In making his argument, peti-

tioner asserts that the Board was wrong in its conclusion that the Retirement System does not have discretionary power to extend or waive statutory deadlines.

G.S. 135-6(f) empowers the Board of Trustees of the Retirement System to "adopt rules and regulations to prevent injustices and inequalities which might otherwise arise in the administration of this Chapter." Rules and regulations are general policies which, when adopted, are applicable across the board. Petitioner is contending that the Board should waive the deadline in his case, despite the fact that no misrepresentation by the State, however innocent, caused him to miss the deadline. Such action would not be a rule or regulation to prevent injustice and inequality across the board, but simply a waiver in a specific instance. This the statute does not contemplate.

If petitioner wants a rule or regulation promulgated which would have the effect of waiving the statutory deadline in his case, he must follow the procedure set forth in G.S. 150A-16. Petitioner's second assignment of error is without merit and overruled.

For the reasons set forth above, the decision of the trial court is

Affirmed.

Chief Judge MORRIS and Judge MARTIN (Harry C.) concur.