SIDNEY RONALD STANLEY v. RETIREMENT AND HEALTH BENEFITS DIVISION, DEPARTMENT OF STATE TREASURER, STATE OF NORTH CAROLINA

No. 8310SC17

(Filed 17 January 1984)

Interest § 1; Retirement Systems § 5— State Employees' Retirement System—interest on death benefits

The Teachers' and State Employees' Retirement System of North Carolina is an agency or instrumentality of the State so that the System was not required to pay interest on death benefits for a deceased teacher from the date of the teacher's death in the absence of statutory or contractual authorization for such interest. Art. IV, § 6(2) of the N.C. Constitution; G.S. 135-5(1); G.S. 143A-34.

APPEAL by petitioner from *Hobgood (Robert H.), Judge.* Judgment entered 4 November 1982 in Superior Court, WAKE County. Heard in the Court of Appeals 1 December 1983.

*Attorney General Edmisten by Assistant Attorney General Norma S. Harrell for the State.*

*J. Douglas Moretz by J. Douglas Moretz for petitioner-appellant.*

BRASWELL, Judge.

Shortly after the death on 9 October 1974 of his wife, a teacher and member of the Teachers' and State Employees' Retirement System of North Carolina, petitioner filed a claim for death benefits under G.S. 135-5(1). He was eventually determined to be entitled to the death benefit by this Court. *See, Stanley v. Retire-*

*ment and Health Benefits Division,* 55 N.C. App. 588, 286 S.E. 2d 643, *disc. rev. denied,* 305 N.C. 587, 292 S.E. 2d 571 (1982). Respondent thereupon paid the principal amount of the death benefit to petitioner. On 13 July 1982, petitioner moved for "entry of the attached judgment" for the principal amount plus interest from 9 October 1974. From the denial of that motion, as it relates to interests, as set out in the judgment of 4 November 1982, petitioner appealed.

The issue is whether plaintiff is entitled to *interest* from the date of his wife's death. For the reasons that follow, we hold that he is not.

A long-standing rule in this State is that the State is not required to pay interest on its obligations unless authorized by contract or statute. *Cannon v. Maxwell, Comr. of Revenue,* 205 N.C. 420, 171 S.E. 624 (1933); *Teer Co. v. Highway Comm.,* 4 N.C. App. 126, 166 S.E. 2d 705 (1969). Hence, the threshold inquiry is whether the Teachers' and State Employees' Retirement System of North Carolina (System) is an agency or instrumentality of the State. We hold it is.

Several factors tend to indicate that the System is an agency or instrumentality of the State of North Carolina. The System was legislatively established by the General Assembly in 1941, G.S. 135-2, and the terms and provisions under which it operates are detailed in Article One of Chapter 135 of the North Carolina General Statutes. The System's membership is composed of public school teachers and administrators and State employees of the State of North Carolina. G.S. 135-3, G.S. 135-2, G.S. 135-1(25). The System is administered by a 13 member Board of Trustees, whose membership includes the State Treasurer and Superintendent of Public Instruction, and nine members appointed by the Governor and confirmed by the Senate of North Carolina. G.S. 135-6(a), (b).

The Board formerly included a member of the House of Representatives, appointed by the Speaker of the House, and a member of the Senate, appointed by the President of the Senate. G.S. 135-6(b)(4) (1981). In 1982, however, the General Assembly amended G.S. 135-6(b)(4) to provide for two members of the Board of Trustees to be appointed by the General Assembly; one member upon the recommendation of the Speaker of the House and the other board member upon the recommendation of the President

of the Senate. G.S. 135-6(b)(4) (Cum. Supp. 1983). As the legislative history to the amendment indicates, the change, which eliminated the requirement that two members of the General Assembly be appointed, was enacted pursuant to the Separation of Powers Act of 1982. 1981 N.C. Sess. Laws (Reg. Sess. 1982), Ch. 1191, § 11. This tends to indicate that the General Assembly, the System's creator, considered the System to be a State agency or instrumentality.

Members of the Board of Trustees are compensated at the rate established for members of State Boards or Commissions. G.S. 135-6(c). The State Treasurer is ex officio chairman of the Board of Trustees, and custodian of its several funds. G.S. 135-6(g), G.S. 135-7(c). Records of the Board are required to be open for public inspection. G.S. 135-6(i). The Attorney General, who represents all State Departments, agencies, commissions, and bureaus, G.S. 114-2(2), is the Board's legal advisor. G.S. 135-6(j). These provisions are all indicia of the System's status as a State agency or instrumentality.

Like the Board of Governors of the University of North Carolina, the Retirement System is a corporation and a "body politic and corporate." G.S. 135-6(a), G.S. 116-3. Significantly, the Board of Governors has been considered an agency of the State for purposes of sovereign immunity, although it is a "corporation." *See MacDonald v. University of North Carolina,* 299 N.C. 457, 263 S.E. 2d 578, *rehearing denied,* 300 N.C. 380 (1980).

This Court, without expressly stating that the Retirement System is a State agency or instrumentality, has implicitly treated the System as such in the past. For example, in *In re Ford,* 52 N.C. App. 569, 279 S.E. 2d 122 (1981), this Court applied the Administrative Procedure Act, G.S. Chapter 150A, in reviewing a ruling of the Board of Trustees of the Retirement System.

Petitioner cites several constitutional and statutory provisions in support of his arguments that the System is not a State agency. We have reviewed each of them and find them unpersuasive.

Article V, Section 6(2) of the Constitution of North Carolina, which provides that System funds shall not be used "for any purpose other than retirement system benefits and purposes, ad-

ministrative expenses and refunds" and that the funds, for invest-
ment purposes, "shall not be applied, diverted, loaned to, or used
by the State, any State agency, State officer, public officer or
public employee," does not suggest that the System is not a State
agency or instrumentality. This constitutional provision is simply
intended to insure the financial soundness of the System by keep-
ing the contributions of members of the System separate from
State funds. Simply requiring the System funds to be kept sep-
arate from general State funds is not sufficient to remove the
System from the umbrella of the State.

Similarly, G.S. 135-5(1), which established the death benefit,
does not support petitioner's position. Although the death benefit
plan was established "as an employee welfare benefit plan that is
separate and apart from the Retirement System," the provisions
of the Retirement System pertaining to administration, G.S. 135-6,
and management of funds, G.S. 135-7, apply to the death benefit
plan. G.S. 135-5(1) (1981). Further, the death benefit is not payable
until the Board of Trustees is provided with satisfactory proof of
death, in service, of a member of the Retirement System. *Id.* In
addition, we note that the version of G.S. 135-5(1) in effect at the
time of Mrs. Stanley's death did not contain a provision that the
employee benefit plan was separate and apart from the Retire-
ment System. G.S. 135-5(1) (1974).

Finally, the Type II transfer of the Retirement System and
the Board of Trustees to the Department of State Treasurer pur-
suant to G.S. 143A-34 does not support petitioner's argument.
Although under a Type II transfer, a transferred agency exer-
cises its prescribed statutory powers independently of the head of
the principal department, the transferee's "management func-
tions" are performed "under the direction and supervision of the
head of the principal department." G.S. 143A-6(b). The term "man-
agement functions" is defined as "planning, organizing, staffing,
directing, coordinating, reporting and budgeting." G.S. 143A-6(c).
The System therefore remains largely under the control of the
Department of the State Treasurer.

Based upon the foregoing, we conclude that the Retirement
System is a State agency or instrumentality. We can find no
statutory or contractual authorization for the System to pay in-
terest on the death benefit. If the General Assembly had intended

to allow interest on the System's death benefit, it would have so provided, as it has for interest payments on death benefits from private insurers pursuant to G.S. 58-205.3. The State has not waived its sovereign immunity and the doctrine fully applies here. *See Guthrie v. State Ports Authority,* 307 N.C. 522, 299 S.E. 2d 618 (1983).

Petitioner concedes that the statutes do not specifically state that he is entitled to interest but he nonetheless argues that the statutes create a debtor-creditor relationship between the System and its members requiring the payment of interest because the System was obligated to pay petitioner's decedent a retirement allowance and other benefits and to pay interest on petitioner's decedent's mandatory contributions to the System. We reject this argument. The System met its obligations when it paid the interest on the contributions pursuant to G.S. 135-7(b) and the principal amount of the death benefit. We can find nothing in the statutes authorizing the payment of interest on the principal of the death benefit.

We also reject petitioner's argument that the non-payment of interest on the death benefit amounted to a taking of property without just compensation. Under G.S. 135-8(b)(2), deductions from a System member's salary are credited, along with the regular interest allowed by G.S. 135-7(b), to the member's individual account. Upon proof of the death prior to retirement of a member, the member's beneficiary or personal representative is paid the amount of the member's accumulated contributions plus regular interest at the time of the member's death, unless the alternate benefit under G.S. 135-5(m) is elected. G.S. 135-5(f). On the other hand, the death benefit under G.S. 135-5(1) is not payable unless the member had been a member for at least one calendar year, had been below a certain age, and whose last day of actual service had not been more than 90 days before the date of his death. The payment of a death benefit is not guaranteed. It therefore cannot be said that there was a "taking."

We hold that the trial court's denial of interest from the date of petitioner's decedent's death was proper. While we sympathize with petitioner, we think any change in the law should be made by the General Assembly.

Affirmed.

Judges HEDRICK and EAGLES concur.